# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

GVL PIPE & DEMOLITION, INC., )
("GVL"), )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　)
vs. ) Case No. CIV-10-846-M
　　　　　　　　　　　　　　　　　　　　)
ADAMS COLE & DALTON RAIL )
SERVICE LLC, a Missouri Corporation )
("ACD"); ADAMS, COLE & DALTON, )
INC., ("ACDI"), and ACD, INC., )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants. )

## ORDER

Before the Court is defendants' Motion to Dismiss, filed October 7, 2010. On October 26, 2010, plaintiff filed its response, and on November 5, 2010, defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.　　Introduction

Plaintiff and defendants entered into a contract ("Subcontract Agreement") on or about November 16, 2009. Under the Subcontract Agreement, plaintiff was to perform salvage operations as a subcontractor for defendant Adams Cole & Dalton Rail Service LLC as part of a demolition project for the Continental Carbon Company. The Subcontract Agreement contains a provision regarding the resolution of disputes between the parties. Specifically, paragraph 18 of the Subcontract Agreement provides:

> **18.　　DISPUTES:**
>
> 　　A.　　In the event any controversy or dispute arises between Subcontractor and Contractor relating to this Agreement or Change Order hereunder (or a breach thereof), Subcontractor shall request mediation of the dispute with Contractor and the parties shall attempt

> in good faith to mediate the dispute. Mediation of the dispute shall be a condition precedent to any further rights that the Subcontractor has to the resolution of this dispute.
>
> (i) If mediation is unsuccessful, then the dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules (then applicable) of the American Arbitration Association (in which case Subcontractor agrees that it will submit its disputes to such arbitration and that such arbitration will be binding to the full extent enforceable under applicable arbitration statutes including the Federal Arbitration Act).
>
> (ii) Mediation and/or Arbitration shall be conducted in Ponca City, Oklahoma.
>
> (iii) The prevailing party shall be awarded reasonable costs and attorney's fees.

Subcontract Agreement of Adams, Cole & Dalton, attached as Exhibit 1 to defendants' Motion to Dismiss, at ¶ 18.

On February 12, 2010, plaintiff filed the instant action in the District Court of Kay County, State of Oklahoma, alleging claims against defendants for breach of contract and for fraud, misrepresentation, and deceit. Specifically, plaintiff alleges that defendants have breached the Subcontract Agreement by failing to pay plaintiff and that defendants misrepresented to plaintiff that the monies owed would be paid. On August 5, 2010, this action was removed to this Court. Defendants now move this Court to dismiss this action because no mediation or arbitration has been conducted.

II.  Discussion

Defendants assert that the provisions in paragraph 18 of the Subcontract Agreement require mediation, then binding arbitration, of disputes between the parties that relate to the Subcontract Agreement. Defendants further assert that these provisions are valid, irrevocable, and enforceable and contain the only avenues for the parties to resolve disputes. Because plaintiff's claims relate to the Subcontract Agreement and because plaintiff filed this action prior to any mediation or arbitration taking place, defendants move to dismiss this action. In response, plaintiff contends that defendants have waived and/or repudiated the mediation/arbitration provision at issue and that plaintiff's claims of fraud, misrepresentation, and deceit fall outside any area contemplated by the mediation/arbitration provision.

A.  Waiver

"The right to [mediation or] arbitration, like any other contract right, can be waived." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772 (10th Cir. 2010). In determining whether the right to mediation or arbitration has been waived, a court should consider the following factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Id.* at 772-73 (internal quotations and citations omitted).

"[T]hese factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand [mediation or] arbitration." *Id.* at 773. "To begin with, a party should not be permitted to demand arbitration when it has previously waived its right to arbitrate in the narrow sense of waiver typically used in the criminal-law context, where a waiver is an intentional relinquishment or abandonment of a known right." *Id.* (internal quotations and citation omitted). Additionally, "[a]n important consideration in assessing waiver is whether the party now seeking [mediation or] arbitration is improperly manipulating the judicial process." *Id.* "Another important consideration is maintenance of the combined efficiency of the public and private dispute-resolution systems." *Id.* at 774.

Finally,

> [t]he burden of persuasion lies with the party claiming that the right to demand [mediation or] arbitration has been waived. *See Peterson*, 849 F.2d at 466 ("A party asserting a waiver of arbitration has a heavy burden of proof.") And in assessing whether that burden has been met, we give substantial weight to the strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration.

*Id.* at 775 (internal quotations omitted).

On or about January 8, 2010, plaintiff sent defendants a letter regarding their failure to pay plaintiff and requested mediation. Specifically, plaintiff stated: "Based on your material breach, and pursuant to numerical paragraph eighteen (18) of the contract, demand is hereby made for mediation. If you fail to respond with a date certain for mediation within five days from the date of the instant correspondence, your failure to respond shall be deemed as your rejection of the provisions set forth in paragraph eighteen (18), and suit will be filed in Kay County." Plaintiff's letter attached as Exhibit 2 to defendants' Motion to Dismiss. On January 10, 2010, defendants responded to

4

plaintiff's letter. In their response, defendants denied that they owed plaintiff any money and asserted that the Subcontract Agreement became null and void when plaintiff accepted a $9,000 payment; defendants, however, did not respond to plaintiff's demand for mediation. Based upon this response, plaintiff contends defendants waived and/or repudiated the mediation/arbitration provision.

Having carefully reviewed the parties' submissions, the Court finds that in their January 10, 2010 response, defendants did not intentionally relinquish or abandon the mediation/arbitration requirement. Further, the Court finds that nothing stated in the letter nor any actions by defendants after said letter were so inconsistent with the right to mediate that they showed that defendants had intentionally relinquished their contractual right to mediation. In fact, in her affidavit, Vicki Cook states that on January 14, 2010, she advised defendants that plaintiff's attorney would be contacting them for mediation, *see* Affidavit of Vicki Cook, attached as Exhibit 4 to plaintiff's Response and Objection to Defendants' Motion to Dismiss, at ¶ 40, thereby indicating that as of January 14, plaintiff itself did not believe that defendants had relinquished or abandoned the mediation/arbitration requirement.

Additionally, the Court finds that the litigation machinery had not been substantially invoked and the parties were not well into preparation of a lawsuit before defendants filed their motion to dismiss based upon plaintiff's failure to mediate. The instant action is at the early stages of litigation. Defendants filed their motion to dismiss two days after they filed their answer to plaintiff's Amended Petition. No schedule has been set in this case, and discovery has not begun. Further, the Court finds no evidence has been submitted which would indicate that defendants are trying to improperly manipulate the judicial process. While defendants have filed counterclaims,

in their reply, defendants state that if their motion to dismiss is granted, all claims, including their counterclaims, should be dismissed so that all claims may be resolved through the mediation/arbitration process. Finally, the Court finds the short delay by defendants in seeking mediation/arbitration did not affect, mislead, or prejudice plaintiff.

Accordingly, the Court finds that defendants have not waived nor repudiated the mediation/arbitration provision.

### B. Scope of mediation/arbitration provision

Plaintiff also asserts that its claims of fraud, misrepresentation, and deceit fall outside of any area contemplated by the mediation/arbitration provision. In construing the scope of a mediation/arbitration provision, a court first classifies the particular provision as either broad or narrow and resolves any doubts concerning the scope of arbitrable issues in favor of arbitration. *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196-97 (10th Cir. 2009).

The mediation/arbitration provision in the instant case encompasses "any controversy or dispute aris[ing] between Subcontractor and Contractor relating to this Agreement or Change Order hereunder (or a breach thereof)". Subcontract Agreement of Adams, Cole & Dalton, attached as Exhibit 1 to defendants' Motion to Dismiss, at ¶ 18 (emphasis added). "The ordinary meaning of the phrase 'relating to' is broad." *Chelsea Family Pharmacy*, 567 F.3d at 1199. Having carefully reviewed the parties' submissions, the Court finds that plaintiff's claims of fraud, misrepresentation, and deceit fall within the scope of the mediation/arbitration provision. Specifically, the Court finds that plaintiff's claims that defendants misrepresented that the monies allegedly owed to plaintiff under the Subcontract Agreement would be paid clearly relate to the agreement between the parties.

6

III.	Conclusion

Accordingly, because all of plaintiff's claims fall within the scope of the mediation/arbitration provision, because defendants have not waived nor repudiated the mediation/arbitration provision, because the parties have not mediated the claims at issue in this action, and because under the Subcontract Agreement mediation is a condition precedent to any further rights that plaintiff has to the resolution of its claims, the Court finds that the instant action, including defendants' counterclaims, should be dismissed. The Court, therefore, GRANTS defendants' Motion to Dismiss [docket no. 16] and DISMISSES this action.

**IT IS SO ORDERED this 18th day of November, 2010.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE